UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AMILTON YOVANY C.C.,[1]

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-01840-TLN-CKD

[A# 221-489-546]

**ORDER**

This matter is before the Court on Petitioner Amilton Yovany C.C.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 2.) Respondents filed an answer. (ECF No. 14.) Petitioner replied. (ECF No. 16.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is a noncitizen who has continuously lived in the United States for over a decade. (ECF No. 2 at 3.)  He has a 14-year-old son and a 2-month-old daughter.  (ECF No. 14-5 at 1.)

The parties agree Petitioner has no criminal record.  (ECF No. 2 at 3; ECF No. 14 at 2.)

Yet, on January 19, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner while he was on his way to work.  (ECF No. 2 at 4.)  ICE officers conducted a vehicle stop.  (ECF No. 14-5 at 2.)  They ordered him out of the vehicle and ordered him to get on the ground.  (ECF No. 2 at 4.)  Although Petitioner immediately and fully complied, ICE officers pointed their guns at Petitioner, who was on the ground, unarmed, and compliant.  (*Id.*)

On the date of his arrest, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner.  (*Id.*; ECF No. 14-4.)

Since his arrest, Petitioner has been transferred to at least three different detention facilities in Maryland, Arizona, and California.  (ECF No. 2 at 4.)  While Petitioner was in Arizona, he asserts he was detained on a bus for approximately two days, where his hands were restrained, he was not provided food, and he was unable to sleep.  (*Id.*)  Around January 28, 2026, he was transferred to the California City Detention Center, where he is currently detained.  (*Id.*)

In two and a half months of detention, Petitioner has never been provided with a hearing of any kind — not a master calendar hearing, bond hearing, custody re-determination hearing, nor any individualized assessment addressing whether detention is justified.  (*Id.*)  Additionally, no hearing dates are set in the future for Petitioner, even though he requested a custody re-determination hearing in writing on the first day of his detention.  (ECF Nos. 16 at 14-2; 16-1.)  Petitioner now challenges the lawfulness of his civil detention.[3]  (ECF No. 2.)

[2]    The facts are not disputed.

[3]    On April 1, 2026, after the Petition was fully briefed, Petitioner filed a Motion for Temporary Restraining Order seeking immediate release from custody.  (ECF No. 17.)  Because the Court now rules on the Petition granting release and Petitioner's motion seeks the same relief, the motion is denied as moot.

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.[4]  (ECF No. 2 at 5.) The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

---

[4]    Petitioner's also claims his detention is arbitrary and capricious government action (ECF No. 2 at 5–6), however, because the Court finds relief warranted under the due process claim, it declines to address additional claims seeking the same relief.

A. Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States for nearly a decade and has built a life here with two children. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Indeed, Respondents do not dispute Petitioner's liberty interest. (*See* ECF No. 14.)

Thus, Petitioner has a liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. The decade that Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful

4

connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has now been detained for over two months without any opportunity to be heard as to the justification of his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal. Petitioner contends he is not a danger or a flight risk, and Respondents do not dispute that contention. Without any showing by Respondents of a legitimate interest to detain Petitioner, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondents.[5] Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his

---

[5] Indeed, as Petitioner points out on reply, they are the very processes owed to Petitioner under 8 U.S.C. § 1226(a).

immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

Respondents contend they sufficiently complied with due process because they provided notice of custody determination, post-deprivation, and they assert that Petitioner could request a custody re-determination hearing.  (ECF No. 14 at 3.)  However, Respondents also submit documents which show that Petitioner did indeed request a custody determination hearing before an immigration judge, in writing, on January 19, 2026.  (ECF No. 14-2.)  Without suggesting that such a request is required under due process, it underscores Respondents' utter disregard for process required both by statute and the Fifth Amendment.

Petitioner has been detained for over two and half months, he has never been afforded a hearing as to his custody determination, despite a request in writing for such a hearing on the very first day of his detention, thus, the Court finds a clear violation of the Fifth Amendment and Petitioner's procedural due process rights.

**IV.  CONCLUSION**

Petitioner is detained in violation of the U.S. Constitution and he must be released. Accordingly, IT IS HEREBY ORDERED:[6]

1. The Petition for Writ of Habeas Corpus (ECF No. 2) is GRANTED.

2. Petitioner's Motion for Temporary Restraining Order (ECF No. 17) is denied as MOOT.

3. Respondents must IMMEDIATELY RELEASE Petitioner Amilton Yovany C.C. (A# 221-489-546) from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondents must return all of Petitioner's documents and possessions that were seized at the time of detention in the condition it existed at the time

---

[6] Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 2 at 7.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

of detention.

4. **Respondents must file a notice of compliance with this Order by April 8, 2026.**

5. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

6. **The Clerk is directed to serve the California City Corrections Center with a copy of this Order.**

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: April 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE